**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 23-cv-00305-NYW-SBP

AUBREE PACHECO,

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

      Defendant.

---

## ORDER

---

This matter is before the Court on Defendant's Opposed Motion to Bifurcate Extra-Contractual Claims and to Stay Related Discovery (the "Motion" or "Motion to Bifurcate"). [Doc. 33]. The Court has reviewed the Motion and related briefing. For the reasons set forth in this Order, the Motion to Bifurcate is respectfully **DENIED**.

## BACKGROUND

On March 15, 2017, Plaintiff Aubree Pacheco ("Plaintiff" or "Ms. Pacheco") was involved in a motor vehicle collision in Denver, Colorado, and suffered injuries as a result. [Doc. 5 at ¶¶ 5, 13, 20–25]. Ms. Pacheco settled with the at-fault driver's insurance company for $100,000 and tendered a demand for underinsured motorist benefits on her insurance company, Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"). [*Id.* at ¶¶ 29–30]. State Farm has not paid any underinsured motorist benefits to Ms. Pacheco. [*Id.* at ¶ 58].

Plaintiff initiated this action on December 30, 2022, asserting three claims against Defendant: (1) breach of contract; (2) bad faith breach of insurance contract; and

(3) unreasonable delay or denial under Colo. Rev. Stat. §§ 10-3-1115 and 1116. [Doc. 5 at ¶¶ 59–82]. The Honorable S. Kato Crews entered a Scheduling Order on May 2, 2023, *see* [Doc. 19], and the case proceeded to discovery.[1]

State Farm filed the instant Motion to Bifurcate on December 20, 2023. [Doc. 33]. Therein, it requests that this Court bifurcate Plaintiff's bad faith claims from her breach of contract claim and stay discovery on those claims until after a trial on her breach of contract claim. [*Id.* at 15]. Plaintiff has filed a response opposing bifurcation, [Doc. 37], and Defendant has replied, [Doc. 40].

## LEGAL STANDARD

Rule 42 of the Federal Rules of Civil Procedure permits a court to order separate trials in a case "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Courts have "broad discretion" in deciding to bifurcate trials, *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1011 (10th Cir. 1993) (quotation omitted), and three considerations guide the Court's bifurcation analysis: (1) whether bifurcation would be in the interest of convenience and judicial economy; (2) whether the issues are separable; and (3) whether bifurcation would be unfair to any party, *Bonham v. GEICO Cas. Co.*, No. 15-cv-02109-MEH, 2016 WL 26513, at *1 (D. Colo. Jan. 4, 2016).

"[D]espite the trial court's broad discretion to bifurcate issues for trial, 'separate trials of claims properly joined is not the usual course.'" *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-cv-01595-CMA-NRN, 2018 WL 5312881, at *4 (D. Colo. Oct. 26, 2018) (quoting *TBG, Inc. v. Bendis*, 160 F.R.D. 621, 622 (D. Kan. 1995)); *see*

---

[1] Plaintiff's opposed motion to amend the Scheduling Order and to extend the discovery deadline is currently pending before Judge Prose. *See* [Doc. 43; Doc. 44].

*also* Fed. R. Civ. P. 42(b) advisory committee's note to 1966 amendment (bifurcation should not be "routinely ordered," but it should nevertheless be "encouraged where experience has demonstrated its worth").  "It is well established that the movant bears the burden regarding a motion to bifurcate."  *Anderson v. Am. Nat'l Prop. & Cas. Co.*, No. 17-cv-03016-REB-KMT, 2018 WL 10609649, at *2 (D. Colo. Feb. 9, 2018).

At all times, the Court is guided by the principles of Rule 1, which states that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

## ANALYSIS

Defendant argues that the Court should bifurcate Plaintiff's bad faith claims from her breach of contract claim.  [Doc. 33 at 1].  Defendant represents that "the total amount of medical expenses incurred [by Plaintiff] to date is $44,987.07 (and was $43,152.07 before suit), and Plaintiff is not seeking any other economic damages" in this case.  [*Id.* at 2].  Defendant asserts that "questions exist as to whether Plaintiff's noneconomic damages exceed $55,012.93," i.e., whether Plaintiff's total damages exceed the $100,000 Plaintiff received from the at-fault driver's insurance company, and if they do not, "then Plaintiff is not entitled to recover anything from State Farm on her contractual or extracontractual claims."  [*Id.*].  Defendant contends that bifurcating the trial in this case would "avoid a potential unnecessary waste of resources by the parties and this court" related to Plaintiff's bad faith claims in the event that Plaintiff does not succeed at trial on her breach of contract claim.  [*Id.*].

Ms. Pacheco opposes bifurcation. She contends that Defendant's Motion hinges on an unsupported assumption that her noneconomic damages will not exceed $55,012.93 and a misstatement of Plaintiff's demands in this case; Plaintiff contends that, contrary to Defendant's representation, she "has disclosed that she will need an additional $61,600 in future care," such that her medical expenses alone exceed the $100,000 she received in the settlement. [Doc. 37 at 5–6]. She contends that bifurcating the trial in this case would waste time and judicial resources, as there would be significant overlap in the evidence and witnesses presented in the two hypothetical trials. [*Id.* at 1–4].

After reviewing the Parties' briefing and the applicable case law, the Court cannot conclude that bifurcation is appropriate here. The Court first considers convenience and judicial economy. *Bonham*, 2016 WL 26513, at *1. "[A] single trial generally is more convenient, subject to fewer delays, and is less costly than multiple trials." *Leone v. Owsley*, No. 12-cv-02961-PAB-KMT, 2016 WL 9735826, at *2 (D. Colo. June 23, 2016) (quotation omitted). Indeed, bifurcating the trial in this case would require this Court to hold two separate pre-trial conferences, block off trial time on its calendar in two separate weeks, and potentially entertain two separate rounds of pre-trial motions practice; it would also require court staff to prepare for two separate trials and require two separate groups of potential jurors to take time out of their busy schedules to participate in jury selection. While Defendant is convinced that it will prevail on Plaintiff's breach of contract claim, such that a second trial on the bad faith claims will be unnecessary, in its view, *see* [Doc. 33 at 10], the Court cannot make such assumptions.

Next, the Court considers whether the issues are separable, an issue over which the Parties vehemently disagree. Defendant argues that Plaintiff's bad faith claims

involve separate legal, factual, and evidentiary issues than her breach of contract claim, [*id.* at 5–6], and that there will be little to no overlap in the witnesses required to testify as to Plaintiff's contractual and extracontractual claims, [*id.* at 6–8]. Plaintiff disagrees, arguing that her "claims rest on similar factual bases and much of the exact same evidence would be presented and a majority of the same witnesses would testify" in support of Plaintiff's contractual and extracontractual claims. [Doc. 37 at 3]. Plaintiff does not expound greatly on this contention, arguing only that "evidence concerning State Farm's investigation will have to include medical evidence of Plaintiff's injuries and [State Farm's] failure to seek out evidence regarding her actual injuries." [*Id.* at 3–4].

Nevertheless, the Court is respectfully not persuaded that the claims are as cleanly separable as State Farm suggests. Plaintiff alleges that State Farm acted in bad faith when it denied payment of underinsured motorist benefits that she believes she is owed; State Farm takes the position that Plaintiff was not injured to the extent claimed. [Doc. 5 at ¶¶ 30, 64, 74, 79–80; Doc. 19 at 4]. The value of Plaintiff's damages, and State Farm's assessment thereof, will be relevant to both the contractual and extracontractual claims in this case. *Cf. Baros v. Sentry Ins.*, No. 11-cv-02487-LTB-KLM, 2012 WL 846706, at *2 (D. Colo. Mar. 12, 2012) (denying bifurcation where the claims "rest[ed] on a similar factual basis—the circumstances of the accident, the particulars of the insurance policy, and [the insurer's] conduct in refusing to pay"). While Defendant asserts that "[a] majority of federal courts in other jurisdictions have regularly bifurcated and stayed insurance 'bad faith' claims until it is deemed that coverage exists," citing to one 30-year-old Texas state-court case in support, *see* [Doc. 33 at 4], the weight of authority in this District favors the denial of bifurcation in standard insurance cases where the contractual and

extracontractual issues sufficiently overlap to justify holding a single trial.  *See Bonham*, 2016 WL 26513, at *2 ("[T]he Court concludes it is in good company in finding that bifurcation in UIM cases is generally disfavored in this District."); *see also, e.g.*, *Pinon Sun Condo. Ass'n*, 2018 WL 5312881, at *7; *Anderson*, 2018 WL 10609649, at *3.

Moreover, while Defendant argues that Plaintiff's bad faith claims will automatically fail as a matter of law if State Farm prevails on the breach of contract claim, *see* [Doc. 33 at 10; Doc. 40 at 5 ("Plaintiff must first prove breach of contract to recover for bad faith.")], this is not necessarily correct.  "Bad faith breach of an insurance contract encompasses the entire course of conduct" between the insured and the insurer, *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003), and a bad faith claim "exists independently from the liability imposed by the insurance contract," *Flickinger v. Ninth Dist. Prod. Credit Ass'n of Wichita*, 824 P.2d 19, 24 (Colo. App. 1991).  In other words, where a plaintiff's bad faith claim is not based exclusively on the denial of coverage, but is also based on the defendant's alleged bad faith in the investigation, defense, handling, or settling of a claim, the absence of coverage will not necessarily preclude a bad faith claim.  The Court has reviewed Plaintiff's Complaint and notes that, while not robust, some of the allegations could support a theory that State Farm acted unreasonably in the handling of Plaintiff's demand aside from its denial of the claim.  *See, e.g.*, [Doc. 5 at ¶¶ 43–52]; *cf. Salls v. Secura Ins.*, No. 18-cv-00370-MSK-GPG, 2019 WL 1228068, at *3 (D. Colo. Mar. 16, 2019) ("I must recognize that a bad faith claim does not necessarily depend on the existence of coverage under Colorado law.  That does not in any way presuppose that a bad faith claim would survive the postulated dismissal of a duty to defend claim—but it could.").

Finally, the Court considers whether bifurcation would be unfair to any party, *Bonham*, 2016 WL 26513, at \*1, or avoid prejudice to any party, Fed. R. Civ. P. 42(b). The Court is respectfully not persuaded by State Farm's contention that it will be prejudiced by a joint trial of the contractual and extracontractual claims because "it would be unfair and irreparably prejudicial to State Farm for a jury to hear evidence of the inner workings of State Farm's investigation and claim handling, in an ongoing, actively contested UIM dispute."  [Doc. 33 at 8–10].  Courts in this District routinely preside over insurance trials in which contractual and extracontractual claims are heard together.  This case does not present any unique circumstances that make the risk of prejudice any higher, and accepting Defendant's argument would suggest that bifurcation is appropriate in any insurance case in which the plaintiff simultaneously asserts claims for breach of contract and bad faith.

Furthermore, any prejudice to Defendant can be mitigated through "[a]ppropriate jury instructions and arguments of counsel" that "will enable jurors to understand the different sets of issues in this case and evaluate the evidence appropriately."  *Leone*, 2016 WL 9735826, at \*2; *see also Precision Fitness Equip. of Pompano Beach, Inc. v. Nautilus, Inc.*, No. 08-cv-01228-CMA-KLM, 2010 WL 4054086, at \*3 (D. Colo. Oct. 14, 2010) ("[T]o the extent that Plaintiff may be prejudiced by jurors confusing or conflating issues, such prejudice can be mitigated through the jury instructions and verdict form.").  "[T]he mere possibility of some prejudice does not justify separate trials where such prejudice is not substantial and there are strong countervailing considerations of economy."  *Tri-R Sys., Ltd. v. Friedman & Son, Inc.*, 94 F.R.D. 726, 728 (D. Colo. 1982).

For all of these reasons, and in its discretion, the Court does not find that bifurcation is warranted under Rule 42(b).  Because bifurcation of the trial is not appropriate, neither is a partial stay of discovery as to Plaintiff's bad faith claims, and the Court need not address whether a stay of discovery is appropriate under the factors set out in *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-PAC, 2006 WL 894955 (D. Colo. Mar. 30, 2006).

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Defendant's Opposed Motion to Bifurcate Extra-Contractual Claims and to Stay Related Discovery [Doc. 33] is **DENIED**.

DATED:  March 22, 2024                    BY THE COURT:

Nina Y. Wang
United States District Judge

8